*Modified.*

---

# CHARLES TOWN.

HARPER v. HARPER.

Decided September 7, 1901.

1. PRISONER—*Right to Examine Witnesses.*

Under section 12, chapter 156, Code, it is the duty of any justice before whom any person is brought for an offense, if demanded by such person, as soon as may be to examine on oath in the presence of the accused, the witnesses for, as well as those against him. (p. 666).

2. MALICIOUS PROSECUTION—*Probable Cause—Discharge.*

In an action for malicious prosecution, the discharge by a justice of the plaintiff, who has been arrested and brought before him for examination, or the refusal of the grand jury to indict him, is *prima facie* evidence of a want of probable cause, ex-

cept in a case where it shall appear that such discharge, or re-
fusal to indict, was after the hearing by the justice or the
grand jury of the witnesses *for* the accused as well as for the
prosecution, and *such prima facie evidence* is liable to be re-
butted by proof, and syl. 16, *Vinal* v. *Core and Compton*, 16 W.
Va. 1, is modified accordingly. (p. 668).

Error to Circuit Court, Raleigh County.

Action by Lee Harper, by his next friend, against H. H.
Harper. Judgment for plaintiff, and defendant brings error.

*Reversed.*

McCreery & Keatley and A. P. Farley, for plaintiff in
error.

James H. McGinnis, for defendant in error.

McWhorter, Judge:

Lee Harper, who sued by his next friend, W. T. Harper,
brought his action of trespass on the case in the circuit court
of Raleigh County against H. H. Harper. Defendant appeared
and demurred to the declaration and to each count, which de-
murrers being argued, were overruled by the court. The defend-
ant then entered his plea of not guilty, and tendered three spe-
cial pleas in writing, when it was agreed by the plaintiff on the
record that the defendant might introduce any evidence in de-
fense of the action, relevant under any special pleas which could
be properly pleaded. A jury was then impaneled and having
heard the evidence returned their verdict in favor of the plain-
tiff, assessing his damages at five hundred dollars. The defend-
ant moved the court to set aside the verdict of the jury as con-
trary to the law and the evidence in the case and to arrest
judgment upon said verdict, of which motions the court took
time to consider, and afterwards overruled the same, and enter-
ed judgment upon the verdict, to which rulings of the court
defendant excepted and filed a bill of exceptions setting forth
the various exceptions saved to him in the courrse of the trial.
Defendant obtained a writ of error, and assigned first as error
the overruling of his demurrers to the declaration and each count
thereof. Counsel for defendant give two reasons why the de-
murrer should have been sustained, first, "for the reason that the

evidence adduced clearly proves that a felony had been committed (see section 5, chapter 145, Code) and it was the undoubted right and duty of defendant to detain the suspected parties until an officer could be secured," and cites many authorities touching his right and ·duty to make the arrest, etc. Of course, what the evidence adduced showed or proved had nothing to do with the sufficiency of the declaration. Their other point is that the declaration failed to set forth the alleged malicious prosecution or arrest. The declaration is substantially in the form laid down in Hogg's Pl. and Forms, 337, and shows good cause of action. Second assignment, that the court erred in permitting the transcript of the justice's docket and the warrant issued by William M. Rogers, the justice, on the 17th of October, 1896, to be given in evidence to the jury. It is claimed by counsel for appellant that the action of the justice was irregular, and if he had proceeded in the regular manner the judgment would have been different in form, citing section 15, chapter 156, Code, on the theory that the justice should only examine the witnesses for the prosecution to ascertain whether there was probably cause for holding the accused to answer further. But section 12, same chapter, provides that "The justice before whom any person is brought for an offense, if demanded by such person, shall as soon as may be, in the presence of such person, examine on oath, the witnesses for and against him, and he may be assisted by counsel." The proceeding was not irregular, but such as was authorized by statute. The judgment of the justice was "After hearing all the evidence on both sides it is considered by me that the prisoner *is* not guilty and *is* hereby acquitted." In *Sullivan* v. *Myers,* 28 W. Va. 375, plaintiff had been arrested and taken before a justice charged with a misdemeanor and without lawful authority a jury of six were sworn to try the question of his guilt and rendered a verdict of not guilty, upon which the justice discharged the prisoner. Upon the trial for malicious prosecution the transcript of the docket of the justice showing what took place at the trial and the verdict and judgment was offered in evidence by the plaintiff, and the whole transcript was objected to by the defendant, and the objection was overruled and the transcript admitted. It was held, "No error sufficient to reverse the judgment."

The judgment was proper evidence as showing a discharge,

yet it appearing that the justice tried the question of guilt of the party and heard the evidence on both sides for and against the plaintiff, the judgment so admitted is entitled to very little weight. It is said in *Hale* v. *Boylen,* 22 W. Va. 240, "In an action for malicious prosecution the burden of proving want of probable cause is, in the first instance on the plaintiff: for the law presumes that every public prosecution is founded on probable cause. But as want of probable cause is a negative proposition necessarily difficult of proof, slight evidence is regarded sufficient to prove such want of probable cause," citing *Vinal* v. *Core &c.* 18 W. Va. 1, (41) ; *Williams* v. *Taylor,* 6 Bing. 19 (E. C. L. 49) ; *Taylor* v. *Williams,* 2 B. & Ad. 845, (22 E. C. L. 199) ; *Cotton* v. *James,* 1 B. & Ad. 128, (20 E. C. L. 360). "But slight as the evidence is, that is necessary to prove in the first place, a want of probable cause, yet there are many cases which hold that the acquittal of the plaintiff by a jury will not even amount to *prima facie* evidence of such want of probable cause, though some have said such acquittal would amount to *prima facie* evidence of such want of probable cause, and thus throw the burden of showing that there was probable cause on the defendant. It is obvious, therefore, from the decisions, that if the acquittal of the plaintiff is any evidence at all on the question of whether there was or was not probable cause, it is entitled to very little weight." In *Williams* v. *Van Meter,* 8 Mo. 339, it is held, "In an action for malicious prosecution, the bare acquittal of the plaintiff is not sufficient evidence of the want of probable cause," and in *Griffin* v. *Chubb,* 7 Texas 603, "Where the prosecutor appeared and testified as a witness at the trial and the defendant was acquitted by the verdict of the jury. *Held,* in an action against the prosecutor for malicious prosecution the defendant's acquittal did not raise the presumption of the want of probable cause." In *Heldt* v. *Webster,* 60 Tex. 207, where the trial court charged the jury that if the plaintiff was discharged by the examining magistrate then the presumption of law is that there was no probable cause; but if the evidence further showed that defendant had reasonable cause to believe, and did believe that the facts stated in the complaint were true, then he would have such probable cause as the law contemplated. The charge was held to be erroneous, because (1) "the discharge of the defendant in a criminal prosecution does not raise the

presumption of want of probable cause. (Following *Griffis* v. *Chubb,* 7 Tex.) (2) The want of probable cause is a question of fact for the jury to determine, and such charge gave to that fact a prominence to which it was not entitled." Here the court holds the discharge of the defendant in a criminal prosecution by the examining magistrate as the equivalent of a verdict of not guilty by the jury in so far as it raises no presumption of want of probable cause, and very properly so, because when the examining justice hears all the evidence for and against the accused and acts upon it, he has gone beyond inquiring as to the probable cause for holding the accused to answer an indictment for the offense and has weighed the evidence and passed upon the guilt or innocence of the accused, as a jury would do upon the trial of an indictment. Where a grand jury or a justice examines only the evidence for the prosecution to ascertain whether there be grounds for indictment against the accused, and the grand jury refuses to indict him or the justice discharges him from arrest, it is *prima facie* evidence of want of probable cause, but it may be rebutted by proof. *Ganea* v. *Railroad Co., 51* Cal. 140. As said in *Brady* v. *Stillner,* 40 W. Va. 289, "In determining whether the prosecution was founded on probable cause, the existing state of facts must be reviewed from the standpoint of the prosecution, and not from that of the accused. For this reason, trial and acquittal do not raise the presumption of the want of probable cause. Verdict of acquittal may be given notwithstanding probable cause, because there is not proof of guilt beyond a reasonable doubt. But the magistrate and grand jury have the very question of probable cause to try and the evidence on the part of the prosecution is alone examined, and the proceeding is entirely *ex parte,* at least so far as the grand jury is concerned." In the case of examination before a justice if the accused so desire, he may of right under the statute produce his evidence and have it heard for the consideration of the justice; he has not this right before the grand jury. The duty of the grand jury being to inquire whether an indictment is to be found, "The general rule is that they should hear no other evidence but that adduced by the prosecution." Wheat. Crim. Pl. & Pr. s. 360. See also s. 362.

Assignments third, fourth and fifth relate to the admission of testimony excepted to and the refusal to admit testimony

claimed to be properly offered. When the plaintiff, Lee Harper, was testifying he was asked by counsel for plaintiff, referring to the time of making the arrest by H. H. Harper of himself, "Was there any demonstrations made upon the part of Mr. Harper; was he armed with any weapons?" A. "To the best of my recollection there was some Winchesters and shot guns in the crowd." Motion to strike out the question and answer overruled and exception. While the answer was not closely confined to answering the question, yet according to the evidence there was a company of four, and the witness without saying anything about defendant especially as to his being armed said there were some Winchesters and shot guns in the crowd, and it was not improper to state what he did in relation to the guns. Again, witness was asked, over objection of defendant: "Was there anybody there that seemed to assume control of the people who came and molested you while you were engaged there at the polecat hole?" Plaintiff had a right to show defendant's connection with the transaction and the question was proper. On cross-examination witness had stated that "Mr. Hylton, he came in that evening (at witness's father's house) and after that John Barnes and Robert Brown and John Brown, and we concluded we would go 'possum hunting, and when we started and got up on top of the first hill, some of them says, 'Let's play a game of cards,' and we played two or three games. Charley Howery had a dog borrowed and we wanted to go on hunting, but they said they never had any lantern, and they went up on the mountain and said they would build a fire up there, and we boys went on 'possum hunting from there." After some further questions and answers witness was asked, "What became of the other boys when you and Charley went 'possum hunting?" Objection to the question was sustained, and was further asked, "What direction did the other boys go when you left them?" and "Do you know what direction the other boys went when you left them?" permitted to be asked. The said questions should have been to both of which objections were sustained and the questions not permitted to be answered to test the correctness of his previous statements as to where the rest of the party were, and to locate the way that witness and Howery went in reference to the field in which the corn was burned. Witness was shown a diagram and asked, "Now, you started from your father's house and came

up two or three hundred yards?" A. "Yes, sir; four or five hundred." Q. "Up here and you all played a game of cards?" A. "That writing you have there, that ain't like the road we took." Q. "What is the difference?" A. "Most on account of drawing the way we went." Q. "Can you make a diagram of the route?" A. "Of course I couldn't make it just as it is, but I can give something close to it, I expect—the road we took." Q. "Will you please do that." Objection, sustained and exception. Witness could not be required to draw a diagram, but he should have been permitted to answer the question, and illustrate it to the jury by a diagram if he chose to do the latter. On examination in chief, the witness was asked: "whether or not he burned the corn," and answered, "No, sir; I did not." At once counsel for plaintiff asked leave, which was granted without objection to withdraw said question and answer in relation to the burning of the corn, it being deemed proper evidence in rebuttal. On cross-examination the witness was asked, "What field do you have reference to?" Ans. "You said the field where the corn was burned." Q. "Was there any corn burned?" Ans. "That is what they all said. I don't know whether it was or not." Motion to strike out the evidence of this witness with reference to the burning of the corn; motion was sustained and exception. It was properly stricken out. See *State* v. *Hatfield*, 37 S. E. 626, 48 W. Va. 561. On cross-examination of Hugh Clayburn, a witness examined for plaintiff, he was asked, "What is your feeling towards Henry Harper?" Ans. "I have nothing against him much." Q. "Didn't he accuse you of stealing things from him?" Objection to the last question sustained and exception. The answer to the question immediately preceding indicated that there was at least some feeling on the part of the witness against the defendant. The defendant had a right to such cross-examination of the witness as would show to the jury the animus of the witness toward the defendant against whom he was testifying, and to bring out any facts that would tend to show the true relations between them, and the motive of the witness in testifying as he did. Sec. 446, 1 Green on, Ev.

It is insisted that the court erred in refusing to set aside the verdict of the jury and grant the defendant a new trial because the verdict was contrary to the law and the evidence, as shown by the record in the case. The proof shows that on the night of

October 17, 1896, after defendant had gone to bed in his house several witnesses saw two or three shocks of corn in the fodder in defendant's field some four or five hundred yards from the house burning, and saw two men with a lantern set fire to other shocks of the corn, going from one shock to another, firing them as they went. Defendant with several other persons went to where the corn was burned and took the measure of some of the tracks left near the corn shocks that were burning, then went a short distance to where some persons were playing at cards and applied the measure of the tracks taken to some of their shoes, found they did not fill the measurement, but arrested them and proceeded to another place not far distant where plaintiff and one Charley Howery claimed to have a polecat "treed" or in a hole, defendant applied the measure he had taken of the tracks found near the burnt shocks of corn to the shoes of plaintiff and Howery, and claimed that the measures and shoes corresponded, when he arrested them also and took them all to his house; the next morning defendant and other witnesses took one of the shoes worn by plaintiff and one worn by Howery to the field where the corn was burned, and also to the "cat hole" where plaintiff and Howery were arrested and tried the tracks found at both places to correspond with the shoes of said plaintiff and Howery. It appears further that the last two mentioned persons separated from the others who were found playing cards a very short distance from where the corn was burned when they started " possum hunting," had a lantern with them, and started in the direction of the corn that was burned. There is no question about the commission by some persons of the crime of burning defendant's corn and fodder. That the prosecution alleged in the declaration was set on foot, instigated, and conducted to its termination by the defendant before the justice, which ended in the acquittal of the plaintiff on the examination of the witnesses for and against him is not denied. In *Stone* v. *Crocker*, 24 Pick. 81, it is said: "There are two things which are not only indispensable to the support of this action, but lie at the foundation of it. The plaintiff must show that the defendant acted from *malicious motives* in prosecuting him, and that he has no sufficient reason to believe him to be guilty. If either of these be wanting, the action must fail. A man from *pure malice* may prosecute another, who is really guilty, or whom

from sufficient reason he believes to be guilty, though in fact innocent, and no action will lie against him. *Golding* v. *Crowle,* — Sayre 1; *White* v. *Dingley,* 4 Mass. R. 435; *Lindsay* v. *Larned,* 17 Mass. R. 190. The *want of probable cause* is the *essential* ground of this action. Other things may be inferred from this. But this cannot be inferred from anything else. It must be established by positive and express proof. It is not enough to show that the plaintiff was acquitted of the charge preferred against him, or that the defendant abandoned the prosecution. But the *onus probandi* is upon the plaintiff to prove affirmatively by circumstances or otherwise, as he may be able, that the defendant had no grounds for commencing the prosecution." See also *Purcell* v. *McNorman,* 1 Campb. 199, (S. C. 9 East. 361) ; *Sykes* v. *Dunbar,* 1 Camp. 202, *note; Icledon* v. *Berry,* 1 Campb. 203, *note; Wallace* v. *Alpine,* 1 Campb. 204, *note; Shock* v. *McChesney,* 4 Yates 507. It is insisted there is absolutely no evidence to support the fact that defendant acted from malicious motives in prosecuting plaintiff, and further that probable cause was clearly shown to exist, to authorize the prosecution of the plaintiff, and this insistence is by no means groundless.

For the reasons herein stated the judgment is reversed, the verdict set aside, and the case remanded for a new trial to be had in case plaintiff should be so advised.

*Reversed.*