# CHARLESTON.

OHIO VALLEY BANK *v.* J. E. BERRY AND HERMAN MOORE.

Submitted October 28, 1919.   Decided November 4, 1919.

1.  APPEAL AND ERROR—*Continuance—Motion for Continuance in Discretion of Trial Court.*

    A motion for the continuance of a cause is always addressed to the sound, but not arbitrary, discretion of the court, and when based on the absence of a witness depends on the diligence employed to obtain his presence and the materiality of his evidence, and a judgment denying such motion must plainly appear to be erroneous, to justify a reversal thereof. (p. 96).

2.  CONTINUANCE—*Diligence in Obtaining Presence of Material Witness Necessary.*

    There is no presumption of due diligence in such cases, from the mere suing out of summons for an absent witness. Diligence to obtain his presence must be affirmatively shown, as well as the materiality of his evidence if present, and that it will not be merely cumulative of other evidence, must also affirmatively appear.   (p. 96).

3.  TRIAL—*Reliance on Fraudulent Representations Necessary for Recovery.*

    An instruction to the jury intended to propound the law of fraud and deceit interposed as a defense to the action on the contract sued on, which omits to submit in connection with the theory of alleged fraudulent representations, the question whether defendants relied thereon and were actually misled to their injury, is erroneous and is properly rejected by the trial court.   (p. 99).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Cabell County.

Action by the Ohio Valley Bank against J. E. Berry and others   Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*W. W. Smith* and *S. E. Love,* for plaintiffs in error.

*Warth & McCullough,* for defendant in error.

MILLER, PRESIDENT:

In an action on a note of defendants in favor of plaintiff, dated June 19, 1917, payable ninety days after date, for the sum of twenty-five hundred dollars, given in renewal of a prior note of J. E. Berry, dated January 2, 1917, for three thousand dollars, payable to G. G. Brown, four months after date, and endorsed in blank by Herman Moore, and discounted by plaintiff, the plaintiff on September 17, 1918, obtained the judgment complained of for twenty-six hundred dollars, as found by the jury, with interest and costs.

The point first urged to reverse the judgment is that the court erroneously denied defendants' motion, made in May, 1918, at which time the case was brought to trial, based on the absence of several witnesses, particularly the absence of G. G. Brown, the payee of the original note for three thousand dollars. The record shows a continuance of the case, on defendants motion, on February 9, 1918, but on what ground does not appear except from the admissions of counsel in their briefs, who say that it was because of the absence of the witness Brown, who, though summoned, did not appear until after the case had been continued, and it had thereby lost its place on the docket for that term and could not be reached for trial.

A motion to continue is always addressed to the sound, not arbitrary, discretion of the court, and when based on the absence of witnesses, depends on the diligence used to secure their presence, and the materiality of their testimony as it may be disclosed by affidavits or other evidence in the case; and to reverse the judgment of the trial court thereon, it must appear to be plainly erroneous. *Doane* v. *Parsons Pulp & Lumber Company,* 77 W. Va. 545; *State* v. *Jones et al.,* 81 W. Va. 182, 99 S. E. 271.

On the question of diligence it is conceded that a continuance was taken at the previous term because of the absence of Brown.

This was sufficient to put the defendants on notice that diligent effort to obtain his presence at the next term was obligatory on them. There is no evidence of any effort on their part to have Brown or any of the witnesses referred to present, other than the ex parte affidavit of Berry that he had had them summoned, but when, nor how long before the trial, does not appear. The affidavit says that the return of the officer shows that Brown, Carr, Compton and Pool were not found. The process and return are not found in the record. For anything appearing in the record, defendants may have waited until a day or two before the trial before having the summonses issued, and they may have been directed only to the sheriff of Cabell County where the witnesses did not reside, and not in time to be executed before the trial. The witnesses may have resided outside of the State and beyond the process of the court, in which case due diligence required that their depositions should have been taken. Proper diligence is not shown by the record, and we can not see any abuse of the discretion of the trial court. . The motion was properly denied on this ground alone. There is no presumption of diligence from the mere suing out of summonses not served; diligence is affirmative matter, to be shown on the motion for a continuance. *Cicerello* v. *C. & O. Railway Co.,* 65 W. Va. 439. In the case just cited we held that a summons not served, procured only six days before the trial, did not show diligence under the circumstances of that case and that there was no abuse of the court's discretion in denying the motion for a continuance.

As to the materiality of the evidence of the witnesses, the only plea filed by defendants, except the general issue, was a special plea to the effect that defendants had been induced to execute the note sued on, and the original note of which it was a renewal, by M. J. Ferguson, vice president and active manager of the plaintiff bank, for the purpose of furnishing working capital for the Detroit Improved Backwall Company, the proceeds of which note were to have been paid to said Brown for that purpose, upon the terms that they were to receive five hundred shares of the capital stock of said company, which were to be and were in fact delivered into the hands of said Ferguson as trustee to hold as security for them against loss, but that in truth and fact the proceeds of said note, or a large part

thereof, were used to liquidate prior indebtedness of said Brown to said bank, amounting to ten thousand dollars, and were not used to market the product of said company as defendants were led to believe they would be, by said Ferguson, vice president as aforesaid; that said company whose stock said Ferguson represented to be good security, was in fact insolvent, and its stock worthless, and said defendants were induced to execute said note as accommodation makers, by the false representations of said Ferguson, unknown to the defendants at the time of making said original and renewal notes, wherefore the consideration for said note had wholly failed etc.

What defendants expected to prove by said Brown was: first, that Brown was indebted to the plaintiff seventy-five hundred dollars, and that they, without knowledge of the facts, were induced to execute said note by Brown and Ferguson that Brown might repay a part of his obligations to the bank, by their representation that the proceeds thereof would be used for the purpose of marketing the products of the Detroit Improved Backwall Company; second, that at the time defendants were so induced to execute said note, and said stock was placed in the hands of said Ferguson as trustee, said company had ceased to exist and said stock was worthless, which fact was known to Ferguson but withheld from defendants, and that Brown was compelled by Ferguson to pay sixteen hundred dollars on account of his indebtedness, wherefore he was unable to market the product of his company and unable to pay said note as he had agreed.

And defendants expected to prove by the witness Carr that at the time of the execution of their notes Brown was deeply involved financially; that Carr had endorsed for him for money loaned Brown by said bank, which had not been paid, but was long past due, as was known to Ferguson but was unknown to defendants; and that the witness Pool would testify to substantially the same facts.

Respecting the witness Brown, we think it more than doubtful that he would have admitted fraud and deceit on his part in obtaining defendants' indorsements, and conspiracy with Ferguson to obtain said notes. It is most unlikely that he would have confessed a crime of that kind. As to the amount of his indebt-

edness to the bank, it was proven by Ferguson that Brown owed the bank at that time seventy-five hundred dollars.   Nor do we think it likely that Brown would have added to his offense by swearing that his company had ceased to exist and that its stock was worthless.·  Besides, defendants appear to have known that the company had no plant and was depending on selling additional stock to obtain money to get goods manufactured and to put its inventions on the market, and also to pay a note from Brown and wife for fifty-five hundred dollars in favor of them, which if paid carried a profit to them of twenty-five hundred dollars for obtaining for him the three thousand dollars on the original of the note sued on.   Ferguson swore on the trial that no part of the proceeds of said notes or of either of them went to pay any indebtedness of Brown to the bank, and that the bank still holds his notes unpaid.   There must have been other employees of the bank who could have been summoned to prove the facts.

Defendants were examined as witnesses in their own behalf, and Ferguson was examined, and they had opportunity on cross-examination to call for the books of the bank but did not do so.   In so far as Brown or either of the other witnesses would have corroborated them, their evidence would have been cumulative, and their absence, so far as such evidence is concerned, is not good ground for a continuance.

Another point of error relied on to reverse, is that the court rejected defendants' two instructions to the jury.   Number one purported to propound to the jury the law of fraud and deceit, applicable to the evidence in the case, and by which defendants represented they were induced to sign the notes involved in the transaction, was defective in omitting to submit to the jury; in connection with the question of the alleged fraudulent representations, the question of the defendants' reliance thereon, and whether they were actually misled thereby to their injury.   3 Brickwood's Sackett on Instructions, p. 2345, §3645; 3 Thomp. on Trials, (2nd ed.), p. 1385, §1947; 10 Stand. Enc. Proc. pp. 63-64, and note; 20 Cyc. 129; *Slaker* v. *Reese,* 82 W. Va. 764, 99 S. E. 641, point 4 of the syllabus.

And what we have said in criticism of instruction number one may be said of instruction number two; it may be said of

both that the false representations assumed must not alone have been "calculated" to mislead, as the instructions submit; they must in fact have been relied on and actually misled the defendants. We find no error in the refusal of defendants' instructions.

It is next argued as an additional ground for reversal that the verdict was contrary to the law and the evidence. Assuming the law to be as affirmed by defendants, and for which they cite, many decisions, the fact of misrepresentations and of fraud and deceit were denied. Ferguson, a witness for the plaintiff, flatly contradicted the alleged misrepresentations on his part, and we think the note for fifty-five hundred dollars and the contract between Brown and defendants, of January 1, 1917, tend to corroborate his evidence rather than defendants on the theory of fraud and deceit, set out in the plea and in their testimony, as well as some other matters testified to by them. But whether so or not, the facts in controversy were submitted to the jury and must be regarded as having been found against the defendants' contentions. And this includes the theory of defendants that Ferguson, representing the plaintiff bank, and in the interest of the bank, and by false representations, procured them to endorse or make their note for one purpose, in order to get the money to apply to the indebtedness of Brown to the bank. The fact that any of the money was so applied, is denied, and not proven by defendants. Indeed Ferguson swears positively that the defendants made their contract with Brown without his previous knowledge, or any advice by him, as to the solvency or honesty of either Brown or his company. The jury heard the testimony of both sides and found for defendants, and we can not say their findings are against the evidence.

The judgment must therefore be affirmed.

*Affirmed.*