# CHARLESTON.

## LORINE THORN *v.* PAUL TETRICK.

Submitted March 20, 1923.   Decided March 27, 1923.

1.  CONTINUANCE—*Absense of One of Three Attorneys for Defendant not Ground.*

    The absence of one of three attorneys for defendant is not sufficient ground for a continuance or postponement of a case regularly set for trial on a particular day. (p. 458).

2.  SAME—*Absence of Witness not Summoned not Ground for Continuance, Where Testimony Cumulative.*

    Nor will the absence of a witness not summoned, and to secure whose presence due diligence has not been shown, be good ground for such continuance or postponement of the trial to a later day of the term, particularly when the evidence of the witness would have been cumulative of other testimony given on the trial. (p. 458).

3.  SAME—*Rule Governing Continuance Applies to Motion to Postpone.*

    The rule governing continuance applies to motions to postpone to a later day, but courts will sometimes more readily exercise their discretion to postpone than to continue the case for the term. (p. 459).

4.  TRIAL—*Motion to Exclude Particular Portion of Testimony Admissible on Other Issues Must be Confined to Specific Part Deemed Inadmissible.*

    Where a motion is made to exclude a particular portion of the testimony of a witness which covers other subjects than the particular question to which the motion relates, and the evidence on the part pertaining to the particular subject is so involved and related to the evidence bearing on the main and other issues in the case and admissible thereon that it is difficult to separate the one from the other, the party objecting must point out and confine his motion to the specific part he deems inadmissible, else his motion should be overruled. (p. 459).

5.  BREACH OF MARRIAGE PROMISE—*Evidence That Defendant Proposed an Abortion Held Competent.*

    In a suit for breach of promise and seduction it is not reversible error to admit evidence showing that defendant proposed to plaintiff that she submit to an abortion as a means of relieving her of the child, which she declines and no abortion is attempted; such evidence is competent on the question of defendant's alleged breach of marriage and his seduction of the plaintiff.

6.  SAME—*Instruction to Exclude Consideration of Attempts to Have Abortion Performed Proper.*

    For the reasons stated in the last preceding point, there was no error of which defendant can complain in denying his instruction to the jury that in their deliberations they should exclude from their consideration all evidence showing or tend-

ing to show that the defendant attempted to have an abortion performed on plaintiff.   (p. 460).

7.   SAME—*$8;000 Held Not Excessive For Breach of Promise and Seduction.*

The verdict of the jury of $8,000.00 in this case evinces no evidence of partiality, prejudice or fraud and corruption on their part, and the trial court committed no error in denying defendant's motion to set it aside and award him a new trial.   (p. 461).

8.   SAME—*Punitive Damages may be Added Where Seduction is Shown in Aggravation.*

Where, as in this case, seduction is shown in aggravation of damages, the jury are warranted in finding a larger amount of damages than for the mere breach of promise of marriage, and if the actual damages found be not sufficient for that purpose, the jury may in their discretion add something by way of exemplary or punitive damages, so-called.   (p. 461).

9.   SAME—*Former Relationship of Plaintiff with Defendant Held not to Bar Action for Subsequent Breach of Promise and Seduction.*

Where, after an original promise of marriage and frequent sexual intercourses indulged, the parties agree because of objection to the marriage by the mother of the defendant, to suspend the relationship for a time, but to be afterwards resumed and the marriage consummated, and it is resumed and the promise of marriage renewed, and plaintiff is seduced by the defendant, such former relationship of plaintiff with defendant will not deny her the right of recovery for damages sustained on account of defendant's subsequent breach of promise and her seduction by him.   (p. 462).

MEREDITH, JUDGE, (absent).

Error to Circuit Court, Marion County.

Action by Lorine Thorn against Paul Tetrick.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*H. H. Rose* and *Neely & Lively,* for plaintiff in error.

*L. C. Musgrave* and *Shaw & Shaw,* for defendant in error.

MILLER, PRESIDENT:

In an action for damages for the alleged breach by defendant of his promise to marry her and for seducing her under such promise, plaintiff obtained a verdict and judgment against him for $8,000.00.

When the case was called for trial January 20, 1922, the defendant moved the court to continue the case to a future day of the same term, on two grounds; first, the sickness of one of his attorneys, who on that occasion was unable to be present; second, the absence of a witness, an aunt of the defendant. Plaintiff resisted this motion. On the first ground plaintiff relied on the fact that defendant had two other able attorneys of record, and who were there present and who are shown to have afterwards conducted the defense. Of course the absence of one of the attorneys, even if he had been the leading one, would not have constituted good ground for a continuance. *Cicerello* v. *Ches. & Ohio Ry. Co.,* 65 W. Va. 439.

And the absence of a witness, even if shown to be a material one, will not be good cause for a continuance, without a showing of due diligence to procure his attendance. In this case, the absent witness resided in the county but was then absent in another state, had not been summoned, and no effort had been made to secure her deposition. Defendant, according to his affidavit, relied solely on her alleged promise to return and give evidence on the trial when notified. His affidavit shows that his only effort to get the witness was a telegram sent her the day before the case was called for trial, to which message she replied: "Can't possibly come, sick." He says in his affidavit that he expected to be able to prove by this witness that plaintiff, after she became pregnant, in a conversation admitted that there never had been any engagement or agreement between her and him, and that he could not prove the same by any other witness. The fact of the contract or promise of marriage, not the supposed conversation, was the material thing. Such testimony, if given, would have been of the same character and cumulative of the other testimony of defendant himself. Due diligence to obtain the presence of

this witness or her testimony was not shown, and her absence
constituted no good ground for 'a continuance. *Ohio Valley
Bank* v. *Berry,* 85 W. Va. 95; *Cicerello* v. *C. & O. Ry. Co.,
supra; State* v. *Duffy,* 75 W. Va. 299.

But it is said that the defendant did not move a continu-
ance, but only a postponement to a later day in the term, and
that the rule as to diligence in such cases is different. The
authorities make no distinction. Some cases do hold that
sometimes the courts will more readily exercise their dis-
cretion in favor of an application to postpone than when a
continuance is asked for. 13 C. J. 127.

On the trial defendant took a bill of exceptions to the rul-
ing of the court refusing on his motion to strike out "all of
the plaintiff's evidence relative to the alleged attempt of the
defendant to have an abortion performed on plaintiff," set-
ting out in said bill of exceptions in full the particular evi-
dence which counsel regarded as relating to the subject. None
of the evidence recited in this bill of exceptions relates to an
attempted abortion, and very little of it bears on the subject
of abortion at all. The defendant is shown to have suggested
it and sought out a nurse, Miss Clayton, and then suggested
it to the plaintiff; and then both plaintiff and defendant went
together to see Miss Clayton, who advised both against this
course; and plaintiff says she did not consent, and that as
suggested by Miss Clayton, they both agreed to get married
and settle the matter in that way, and afterwards, on de-
fendant's promise to support her while there, she went with
defendant's aunt to Pittsburgh to remain until the child was
born, and then return and they would be married. But the
money he gave her running out, and he refusing to supply
her any more, she returned home. Practically all of the
evidence contained in the bill of exceptions relates to de-
fendant's renewed promises of marriage, his threats to kill
her on one occasion, and his apparent purpose to kill him-
self by poison, and her assisting him to recover from the
effect of taking the poison. Little, if any, of this evidence
could be excluded on the theory that it tended to prove an
attempt at abortion, and it was so related to pertinent evi-
dence bearing on the contract of marriage and the promises of

defendant relating thereto that counsel have not pointed out particularly what part should be excluded. Their exception goes generally to the whole of the evidence recited. The rule is that if in a deed or other document there is any evidence relative and competent on the issue to be tried, a general objection will not be availing; the objection must go to the specific part not admissible, or its admission will not be regarded as error in the appellate court. *Schaubuch* v. *Dillemuth,* 108 Va. 86; *N. & W. Ry. Co.* v. *Sutherland,* 105 Va. 545; *Hubbard* v. *Equitable Life Assur. Soc.,* 81 W. Va. 663, 673, and cases cited, among them *State* v. *Calhoun,* 67 W. Va. 666, which is particularly applicable to the bill of exceptions here involved. The evidence sought to have excluded, moreover, relates also to the seduction and abandonment of plaintiff by defendant. Such evidence is competent and admissible in aggravation of damages according to one of the cases cited by defendant's counsel. *Geise* v. *Schultz,* (Wis.) 10 N. W. 598. In the other cases cited abortion had actually been accomplished.

Reversal is also sought on the ground that the court refused defendant's instruction number 5, the only one of the six requested which was refused. It was rightly refused, among others for the reasons just assigned for overruling defendant's motion to exclude the evidence contained in his bill of exceptions number four. If given, it would have told the jury "that in their deliberations as to their verdict in this case, they must exclude from their consideration all evidence showing or tending to show, that the defendant attempted to have an abortion performed on the plaintiff." This of course must have been intended to exclude all the evidence covered by defendant's bill of exceptions number four. As pointed out, there was no evidence of an attempt by defendant to commit an abortion, nor that an abortion was committed. As far as the evidence on that subject went, it amounted to nothing more than a suggestion or request to plaintiff to suffer an abortion, and not being accomplished the plaintiff could receive no damages as a result of an abortion not committed. The evidence showed seduction, and tended to show **defendant guilty of this wrong**; and as pointed out already

such evidence was competent and admissible in aggravation of damages. Our cases say also that in an action or suit of this kind it is proper to aver and prove seduction in aggravation of damages. *McKinsey* v. *Squires*, 32 W. Va. 41; *Dent* v. *Pickens*, 34 W. Va. 240.

Lastly, the excessiveness of the verdict is relied on to reverse the judgment. It is said in argument that as compared with the financial worth of the defendant, the verdict was out of due proportion. But his financial worth is not by any means the only thing the jury may consider. Our cases properly hold that in cases of this kind the jury may in addition take into consideration the social position of defendant; the rights and privileges plaintiff would have acquired, financially and socially, if defendant had performed his contract; the worldly advantages of a home provided for her; the station she would have occupied as a result of the marriage; the injuries and wounds to plaintiff's feelings, affection and pride; the disappointment, humiliation, mortification, contempt, pain and distress of mind suffered in the loss of her marriage; and the injury to plaintiff's reputation and future prospects of marriage. *Kendall* v. *Dunn*, 71 W. Va. 262. See also *Baumle* v. *Verde*, (Okla.) 41 L. R. A. (N. S.) 840, and elaborate notes. And if the actual damages be not sufficient in the minds of the jury for that pupose the jury may also add exemplary damages if it be shown that the defendant entered into the marriage contract with improper motive and then ruthlessly and unjustifiably broke it, for then he not only does a wrong to the woman, but in a remote sense to society, which encourages marriages. 4 Sutherland on damages, (4th ed.), §987; 2 Sedgwick on damages, (9th ed.) §637a.

And as to the amount of damages in breach of promise cases, owing to the nature of such cases, it has been found impossible to fix the amount of compensation by any precise rule, and as in torts the measure thereof is a question for the sound discretion of the jury in each particular instance. 2 Sedgwick on Damages, §637. The only limitation on the jury is that they shall not vitiate their verdict by any evidence of bias, partiality, prejudice or fraud and corruption. We

do not think there is evidence of any misconduct on the part of the jury, in this case. Counsel cite a few cases as examples of verdicts which have been held to be excessive, where the facts were, as counsel conceive, very similar to the facts in this case. We may in this connection refer counsel to the very much larger number of cases where verdicts as much or more out of proportion to defendant's financial circumstances than the verdict here involved, were sustained. See 41 L. R. A. (N. S.), note page 854; 2 Sedgwick on Damages, p. 1273, notes.

In many of those cases seduction of the plaintiff, as in this case, was one of the aggravating facts justifying larger damages. Necessarily the damage done the woman is much greater where she has been seduced under promise of marriage than where such added wrong is not involved.

In this case plaintiff and defendant are shown to have been children brought up in the same neighborhood, to have gone to school together, and to have been lovers for years before the breach of the relationship thus established occurred.

Much reliance seems to be placed by defendant's counsel on certain phases of the evidence which in their opinion should go to reduce the amount of the damages which plaintiff is entitled to recover. It is said that seduction is not shown; first because of the plaintiff's evidence tending to show that in the beginning defendant's efforts at sexual intercourse were accomplished by force, or rape, which can not be considered in an action for breach of promise; second that her evidence shows a case of mere voluntary sexual intercourse, not upon promise of marriage; third, that if seduction was accomplished, it occurred more than three years before suit brought.

The only evidence of plaintiff upon which counsel predicate the theory of rape is that in which she describes the first occurrence when she submitted to defendant's embraces; that was in an automobile, when they sat in the rear seat and he put his arms around her and pressed her so hard that she said she could hardly breathe. It is manifest from the whole of her evidence that she did not mean that he had thereby forced her against her will. The defendant admits a promise

of marriage, but he says it was only in jest, and that he was not sincere in his proposal. Plaintiff does not rely on this and their subsequent conduct of this character before there was a suspension thereof because of objections by defendant's mother and her condition of health, and during defendant's absence in the world war, but on his renewed promises thereafter, in October or November 1919, and her subsequent seduction on such renewed promises of marriage. She testified that before the original suspension of their love affair, it was agreed that they should later resume the relationship, and that it was resumed as she stated. Referring to the first act of sexual intercourse, counsel on cross examination asked plaintiff the following question, and received the following answer: "Then it was not in consideration of your having sexual intercourse with him that he promised he would marry you. A. No." But to understand this evidence reference must be had to what witness had said just before she gave this testimony. She then said that before that occasion defendant had promised to marry her. And of course she did not mean to say that she had submitted to such intercourse in advance of defendant's engagement to marry her. But it is said on the authority of *Salchert* v. *Reinig*, (Wis.), 115 N. W. 132, that a woman whose virtue is already lost can not be seduced until it is affirmatively shown she had reformed. Plaintiff swears that she had never had such improper relations with any other man, and that the last promise and conduct of defendant which accomplished her ruin was but a renewal of their former relationships according to agreement; and according to the cases cited the subsequent seduction under a renewed promise to marry is admissible in evidence on the question of damages.

We are of opinion to affirm the judgment.     *Affirmed.*