# CHARLESTON.

## WALDRON v. SPERRY.

Submitted February 2, 1903, Decided April 11, 1903.

1. MALICIOUS PROSECUTION—*Justice—Trial.*

On complaint and information, on oath, of S., charging W. with felony, the justice before whom the complaint was made, issued his warrant in due form for the arrest of W.; the warrant was placed in the hands of an officer, who was authorized to execute it; W. was arrested thereon and brought before said justice for examination on said complaint; S. was the only witness summoned on behalf of the State; he failed to appear; for that reason, the examination was, by the justice, continued until the next day; S. again failed to appear, although he was sent for; the complaint and warrant were then dismissed by the justice, without having heard any evidence whatever; and the accused was discharged from custody. W. has not been, in any way, further prosecuted on said charge. *Held:* The dismissal of the complaint and warrant, and discharge of W. as aforesaid, are a sufficient ending and termination of that particular prosecution to entitle W. to maintain his action for malicious prosecution, so far as that element of his case is concerned. (p. 124).

Error to Circuit Court, McDowell County.

Action by John W. Waldron against J. J. Sperry. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

T. F. HENRITZE, for plaintiff in error.

STROTHER, TAYLOR & STROTHER, for defendant in error.

MILLER, JUDGE:

On the 4th day of October, 1900, John W. Waldron com-- menced an action in the circuit court of McDowell County against J. J. Sperry, for an alleged malicious prosecution. At the October Rules, following, he filed his declaration, containing two counts, and laying his damages therein at $10,000.00.

On the 3rd day of September, 1901, plaintiff caused notice to be served on defendant, that he would, at the September term of the court, demand and insist upon a trial of the said action.

On the 12th day of September, 1901, the defendant demurred to the said declaration, which demurrer was overruled; and thereupon the defendant entered his plea of not guilty; and issue being joined thereon, he moved the court to continue the trial of the action until the next term, and in support of his motion, tendered and filed his own, and the affidavit of Dr. G. W. L. Sanford, who was also examined in open court, touching the matters referred to in his affidavit.

The court overruled said motion and the defendant excepted. Thereupon a jury was impanneled and sworn in the case; the evidence adduced by the plaintiff was heard, the defendant offered none, and a verdict was rendered in favor of the plaintiff against the defendant for $500.00. The defendant then moved the court to set aside said verdict, and grant him a new trial of the action; but the court refused so to do, and the defendant again excepted. Wherupon the court entered judgment upon the verdict of said $500.00 against the defendant, who then moved the court to arrest said judgment, which motion was also overruled; and the defendant again excepted.

The defendant also excepted to the refusal of the court to give to the jury, three several instructions, Nos. 1, 4 and 5, asked for by him, and also excepted to the giving of an instruction asked for by the plaintiff, all of which are hereinafter referred to. The defendant, during the trial, also excepted to the action of the court in admitting, as evidence, a certain warrant for arrest, with the return of the execution thereof, endorsed thereon, and an entry in the docket of the justice made after the return of said warrant. All of the evidence adduced on the trial, with the several rulings of the court, excepted to as aforesaid, appear by bills of exception.

Dr. Sanford's affidavit, sworn to on the 10th day of September, 1901, before T. F. Henritze, notary public, states in substance, that he was the physician of defendant, who was then suffering from general nervous debility; that the defendant's condition was such that he was physically unable to undergo the fatigue and excitement incident to a trial; and that he had been waiting on the defendant for about two weeks. Being cross examined, Sandford further stated that he had seen Sperry since making the affidavit; that his condition was slightly better; that defendant has nervous debility produced by alchoholism; that on the evening before, witness had seen Sperry walking around in his yard at home, with a gun shooting bull-bats; that his then condition would not exist if he had not been drinking; that he was in the habit of taking periodical sprees; that his condition was such that he might ride to town, (meaning the county seat) ; that the ride would be beneficial to him; and that he could appear in court without detriment to himself, but that he did not think defendant could be cross examined.

Defendant's affidavit, sworn to before said Henritze, on the 11th day of September, 1901, states substantially that he was not ready for the trial of the action at that term, for the reason that he was physically unable to attend the trial and testify; that his testimony in the case was material to his defense; that he could not prove the same facts, which he would testify to, by any other witness that he knew of; that T. F. Henritze, one of the counsel in the action, had, at his request, soon after the institution of the suit, written to R. C. McClaugherty, an attorney at Bluefield, to employ him as co-counsel in the case; that defendant had relied upon said McClaugherty as his attorney in the case; that he had been advised by his physician that the excitement and fatigue incident to a trial of the case would be highly injurious to him, owing to his then physical condition; that said McClaugherty was not in attendance upon the court; that he had been informed on the first day of the then term, that McClaugherty was not in a condition physically to properly try the case; that McClaugherty lived at Bluefield, thirty-six miles away; that all of the correspondence, in regard to the suit had been carried on with McClaugherty by his other attorney, T. F. Henritze; that defendant had on that morning

made the trip from his home to Welch, a distance of about one mile, and that he was then able to make such trip again, but that the excitement and anxiety incident to attending the trial and testifying in it, he was advised by his physician, would very much retard his recovery, and perhaps completely prostrate him. Plaintiff asked leave to cross examine said Sperry upon said affidavit, but he did not appear in court to be so examined.

This evidence shows that the defendant had brought upon himself his then nervous debility; and he fails to show that his case could *not be safely tried without his own evidence.*

It also appears that he then had counsel in court attending to his interests in the case.

Defendant did not make out a proper case for a continuance. *Tomkins* v. *Burgess,* 2 W. Va. 187; *Dimmey* v. *Railroad Co.,* 27 W. Va. 32; *Rossett* v. *Gardner and Richardson,* 3 W. Va. 531. The motion, therefore, was properly overruled.

The declaration contains all the requisites required by our adjudicated cases of this character. Appellant has not specified any defects therein. We find none. The demurrer thereto was also properly overruled.

The said warrant, as the evidence shows, was issued on the 12th day of September, 1900, in McDowell County, by W. G. Hunt, then a justice, in and for said county, duly qualified and acting as such, upon the complaint and information on oath of said J. J. Sperry, before said justice, and recites that John W. Waldron, on the 11th day of September, 1900, in said county, one Smith and Wesson revolver of the value of twenty-four dollars, of the goods and chattels of J. S. Sperry, then and there being found, did steal, take and carry away. The warrant is directed to the sheriff, "or any other constable of said county," and required the officer forthwith to apprehend and bring before that or some other justice, of said county, the body of said Waldron to answer the said complaint and to be further dealt with according to law. The return endorsed on said warrant shows that A. C. Hufford, deputy for W. W. Whyte, sheriff, executed the warrant, by arresting J. W. Waldron therein named, and delivering him to W. G. Hunt, J. P. of McDowell County, West Virginia, on the 13th day of September, 1900. The entry in the docket of the justice recites that on information on oath of J. J. Sperry, on the 12th day of September, 1900, in the

said county of McDowell, and State of West Virginia, a warrant was issued for the arrest of John W. Waldron, for this, to-wit: that he one Smith and Wesson revolver of the value of twenty-four dollars of the goods and chattels of J. J. Sperry, then and there being found, did unlawfully and feloniously steal, take and carry away, and that the said warrant was duly served and returned before said justice on the 13th day of September, 1900, the said Waldron having been arrested by A. C. Hufford, and brought before the justice under said warrant, on the 13th day of September, 1900; that thereupon said case was continued until the 14th day of September, 1900, for trial, said Waldron being left in the custody of said Hufford, a deputy sheriff, during said time; and that on said 14th day of September, 1900, said Waldron appeared and announced himself ready for, and demanded a trial, and no witness appearing for the State, the case was dismissed without trial. We see no reason why said warrant, return thereon, and entry of the justice, dismissing said prosecution, should not have been received by the court as evidence along with the other testimony adduced. The court did not err in admitting them.

It was proved that A. C. Hufford arrested Waldron upon said warrant; that Hufford was a deputy sheriff of McDowell County at the time; that Sperry handed said warrant to him and said he wanted Hufford to arrest the d—n s—b, John Waldron; that he (Waldron) had stolen his pistol, and to put him in jail; that on the morning of September 13th, Hufford did arrest Waldron; that Sperry was summoned as a witness, and the only witness, for the State; that several witnesses were summoned on behalf of Waldron; that in the evening of that day, Waldron was taken before justice Hunt; that his witnesses also appeared; but Sperry failed to appear, although he was sent for; that because of the absence of Sperry, the examination was, by the justice, continued until the next day, and Waldron was again placed in the custody of the officer; that in the evening of the next day, the said officer with Waldron went again before the justice; that two attorneys, in behalf of Waldron, and his witnesses were also there, but said Sperry, although again sent for, failed to appear, whereupon the said prosecution was dismissed by the justice, without any evidence being heard; and said Waldron was discharged therefrom, and

released from custody, and that Waldron has not been in any way further prosecuted for, or on account of, said alleged offense. It was further proved that on the night of the 11th day of September, 1900 Waldron, being then a deputy sheriff of McDowell County, went into Hutson Bro's saloon, in the town of Welch; that at the time, there were in the saloon, Sperry, who was intoxicated; Dan Harman, Bill Payne, Bub Payne, Clarence Switzer, Hutson and others; that Sperry had a 32 Smith and Wesson revolver, loaded, in his hand; that he had been thrusting his pistol in the faces of some of the people there; that Waldron had gone into the saloon to see about the matter; that while Waldron and W. B. Payne were talking about it, Sperry came across the room and jabbed Waldron in the stomach with the muzzle of the pistol; that Waldron grabbed the pistol and wrenched it out of Sperry's hands, and put it into his own pocket; that afterwards, Sperry asked him to give up the pistol, but Waldron told him that he would not give the pistol back to him until he got sober; that Sperry got angry and said he would have Waldron removed as deputy sheriff; and that very soon afterwards, Sperry having disputed Waldron's word, Waldron knocked him down. It was also shown that the pistol was a new one, in good condition, loaded all around; and that such pistols could be bought in the market for twelve dollars or fifteen dollars. It was further proved that Waldron had been a deputy sheriff of the county, continuously since 1893. There was other evidence given on unimportant matters, but none of it favorable to Sperry.

The instructions refused, and the one given by the court, complained of by the defendant, are in the words and figures following:

"1. The court instructs the jury that the evidence in this case is entirely insufficient to entitle the plaintiff to any verdict in the case and the jury is instructed to find for the defendant."

"4. The court instructs the jury that the process upon which the alleged malicious prosecution in this case is based, is void, and if the jury believe from the evidence in the case that there was no restraint put upon the liberty of the plaintiff by the deputy sheriff, A. C. Hufford, in connection with said alleged prosecution, the jury shall find for the defendant."

"5. The court instructs the jury that if they believe from

the evidence in this case that the defendant was intoxicated and approached the plaintiff on the night of the 11th of September, 1900, in a crowd, at the saloon, and punched him with his pistol, and the plaintiff forcibly took said pistol out of the possession of the defendant, and a quarrel ensued in which the plaintiff struck and knocked the defendant down, and told him that he would return the said pistol to him when he got sober; and that the plaintiff did not return the defendant's pistol to him, and still had possession of the saem on the 12th day of September, 1900, at the time the warrant referred to in this case was issued and delivered to A. C. Hufford, and that the plaintiff retained possession of said pistol until the 13th or 14th day of September, when he turned the same over to the justice, such retention of said pistol was wrongful, and there was probable cause for such prosecution, and the plaintiff cannot recover in this case."

"The court instructs the jury that although no actual damages may have been proven by the plaintiff in this case, John W. Waldron, as to actual attorney fees and expenses about his defense in the prosecution commenced or pursued against him by the defendant in this case, J. J. Sperry, and although he may have proven no actual damages, for loss of time because of the prosecution against him, but of all this the jury are to judge from the evidence in the case, yet the jury may give such damages as they think proper for injury to the plaintiff's feelings, person and character by his detention in custody and prosecution, if they believe from the evidence that there was a prosecution commenced or pursued against him by the defendant, and that said prosecution was instigated by the defendant, Sperry, without probable cause therefor, and with malice express, or implied from the want of probable cause, and that the prosecution was conducted to its termination to the final discharge of the plaintiff, John W. Waldron, without proof as to the amount of such damages, and the jury may give such punitive or exemplary damages, as they may think proper, for the conduct of the defendant, J. J. Sperry, if they believe from the evidence in this case that the said prosecution against John W. Waldron was commenced or pursued for the private ends of defendant, Sperry, or if they believe from the evidence that said prosecution was commenced or pursued with reckless disregard

of the rights of the plaintiff, Waldron, and may assess such damages without proof as to the amount thereof. The amount of said damages not to exceed ten thousand dollars."

The gist of this action is the want of probable cause, and the maliciousness of the defendant's conduct. *Tevenner* v. *Morehead,* 41 W. Va. 120; *Harper* v. *Harper,* 49 W. Va. 661, 669.

In legal effect, instruction No. 1 declares that upon the evidence in the case, Sperry had probable cause for instigating and procuring the prosecution of Waldron, as alleged in the declaration. In actions for malicious prosecution, whether a state of facts, admitted, undisputed or assumed, constitute probable cause or not, or whether from such facts the existence or absence of probable cause is to be inferred, is a pure question of law for the decision of the court, and not for the jury. Upon the supposed or assumed state of facts, no matter however complicated, if there be testimony tending to prove such facts, and they are pertinent to the question, the court is bound, at the instance of the parties, to instruct the jury, whether such supposed or assumed state of facts does or does not amount to probable cause. *Vinal v. Core and Compton,* 18 W. Va. 1. The proposed instruction was improper in this case. The court did not err in refusing to give it. The restraint, or abuse of restraint, of Waldron by the officer, having him under arrest, does not go to the foundation of this action, as instruction No. 4 assumes. Therefore, the court correctly rejected said instruction No. 4. The theory of instruction No. 5 is that if Waldron was guilty of a wrongful act, toward Sperry, that he, Sperry, had probable cause for the criminal prosecution against Waldron. The bare establishment of this proposition shows the fallacy of the contention. Instruction No. 5 was also improper. The court did right in rejecting it.

No contention is made by defendant's counsel concerning the said instruction given at the instance of the plaintiff. We see no objection to it.

Defendant's counsel contend that the criminal prosecution against Waldron having been dismissed by the justice, without any evidence having been heard, and said Waldron having been discharged from custody upon said charge, it is not such sufficient *ending* of the prosecution as entitles the plaintiff to maintain his action. *Ward* v. *Reason,* 98 Va. 399, is cited to sustain

this view.   On pages 403 and 404 of the opinion, the court says: "Notwithstanding the warrant in the case at bar charges that the larceny committed was felonious, the justice before whom the accused (defendant in error) was brought for trial was clothed with power to convict or acquit him upon hearing the evidence.   The offense charged in the warrant is a misdemeanor under our statute, the word 'feloniously' being used characterize the intent with which the taking and carrying away was done—a felonious intent being an essential ingredient in the crime of larceny, whether grand or petit; distinguishing it from a mere trespass. * * *

"In this case, therefore, the justice, with full power upon hearing the evidence to convict or acquit the defendant in error of the charge made in the warrant, without hearing any evidence, dismissed the warrant and discharged him.   This action amounted to no more than the assent of the justice to a cessation of the proceeding s without any examination whatever of the cause upon its merits.   It was the equivalent of a *nolle prosequi* —nothing more—and could not establish the innocense of the defendant in error, nor show want of probable cause for the prosecution.

"The case of *Jones* v. *Finch,* 84 Va. 207, very much relied on by counsel for defendant in error, was a similar action to this, and it was there held that a discharge of the accused brought before a commissioner of the United States Court upon the charge of robbing the United States mail, the commissioner being clothed with the power to send the accused on for trial or discharge   him,   was   a sufficient   termination   of the prosecution   to maintain   an action   of   malicious prosecution, but the court in reaching the conclusion, emphasizes the fact that the declaration alleged that the commissioner discharged the accused, and dismissed the warrant upon hearing the evidence.   That is not this case.

"While the declaration here does allege that the prosecution upon which this action is found, 'is now wholly ended,' it is but an allegation of a conclusion of law, not warranted by the facts recited, and upon which it is made.   They do not convey the idea of trial and acquittal, but import only a cessation of the proceedings without any examination of the case upon its

merits, and was, therefore, no bar to the institution of another prosecution for the same offense."

It will be observed in the case cited, that "the justice before whom the accused (defendant in error) was brought *for trial was clothed with power* to convict him *upon hearing the evidence."* The offense charged was a *misdemeanor.*

In the case of *Jones* v. *Finch,* 84 Va. 207, the language of the court is, "The commissioner *being clothed with the power to send the accused on for trial or discharge him,* the discharge of the accused was sufficient termination of the prosecution to maintain an action of malicious prosecution."

The decisions cited are placed on the ground that the justice and commissioner were clothed with the power to try and determine the guilt of the accused, upon the evidence.

By certain provisions in chapter 50 of the Code, a justice has jurisdiction of certain misdemeanors, and may try,determine and give judgment therein, with or without a jury, if none be demanded by the accuesed. Section 226 of said chapter defines the case in which a jury may be empanneled; section 230 prescribes the cases, and defines the modes of appeal to the circuit court; but in no case can a justice try and determine the guilt of the accused and render final judgment therein, where the charge is for a *felony.*

Code, chapter 156, section 1, provides that, "A judge of a circuit court, in vacation, as well as in term time, or a justice, may issue process for the apprehension of a person charged with an offense."

Section 2 that "On complaint to any such officer of a criminal offense, he shall examine, on oath, the complainant and any other witnesses, and if he see good reason to believe that an offense has been committed, shall issue his warrant reciting the accusation, and requiring the person accused to be arrested and brought before a justice of the county; and in the same warrant may require the officer to whom it is directed to summon such witness, as shall be therein named, to appear and give evidence on the examination. * * * ."

Section 15 of the same chapter provides that, "The justice shall discharge the accused if he consider that there is not sufficient cause for charging him with the offense; and he shall commit him to jail, if he consider that there is such cause, or

let him to bail under the sixth section. He shall require recognizance, with or without sureties, as he deems proper, from all material witnesses against the accused, and also for him if he desire it."

And section 16 *Id.* provides that, "When a justice so considers that there is sufficient cause for charging the accused with the offense, unless it be a cause wherein it is otherwise specially provided, the commitment shall be for trial and the recognizance be for the appearance in the circuit court on some day of the term then being held, or on the first dav of the next term thereof."

In this case the justice could determine only whether or not there was sufficient cause for charging Waldron with the offense stated in the complaint and warrant. If the justice considered that there was not sufficient cause for so charging Waldron, it was his duty to discharge him.

· There was no evidence against Waldron, and so far as the record in this case discloses, there could have been none produced to show that he either stole, or intended to steal, Sperry's pistol. What was the justice to do under the circumstances? He had adjourned the examination from the 13th to the 14th of September. Was he to hold Waldron in custody indefinitely? We think not. He dismissed the complaint, and discharged Waldron. This particular proceeding was then at an end. No appeal from the action of the justice could have been taken. It is true that the dismissal of the complaint, and the discharge of the accused, were not a bar to any further prosecution against him upon the said charge; but it is proved that there has been no further prosecution therefor.

In *Harper* v. *Harper*, 49 W. Va. 661, syllabus, points 1 and 2, it is held: "Under section 12, chapter 156, Code, it is the duty of any justice before whom any person is brought for an offense, if demanded by such person, as soon as may be to examine on oath in the presence of the accused, the witnesses for, as well as those against him.

"In an action for malicious prosecution, the discharge by a justice of the plaintiff, who has been arrested and brought before him for examination, or the refusal of the grand jury to indict him, is *prima facie* evidence of a want of probable cause, except in a case where it shall appear that such discharge, or

refusal to indict, was after the hearing by the justice, or the grand jury, of the witnesses *for* the accused as well as for the prosecution, and *such prima facie evidence* is liable to be rebutted by proof."

It seems that there was in this case a final determination and ending of the said criminal prosecution. The said verdict was warranted by the evidence.

There is no error in the refusal of the circuit court to set aside the said verdict and grant the defendant a new trial of the action. The judgment is right and must be affirmed.

*Affirmed*