FRANKLIN D. JONES, AN INFANT, *etc.*

*v.*

PAUL BERRY

(No. 9912)

Submitted April 15, 1947.  Decided May 20, 1947.

*Fletcher W. Mann,* for plaintiff in error..

*Clay S. Crouse,* for defendant in error.  .

Fox, PRESIDENT:

Paul Berry complains of a judgment entered by the Circuit Court of Raleigh County, upon the verdict of a jury, in an action tried in said court, in which Franklin D. Jones, an infant, was plaintiff, and Paul Berry and W. M. Daniel were defendants. The action was instituted on the theory that defendant Berry was the agent of defendant Daniel, and that the personal injury on which the action was based was sustained by plaintiff while Berry was in Daniel's employ. On a special plea filed by Daniel, denying such employment and agency, the case was dismissed as to Daniel and trial had as against Berry only.

It is somewhat difficult to determine the basis of this action, that is, whether the same was intended to be prosecuted on the theory of the violation of Code, 17-8-11, or on the basis of common law negligence. After the words of inducement, the declaration reads:

> "* * * said defendant, Paul Berry, and said defendant, W. M. Daniel, through and by his agent, Paul Berry, operated a motor vehicle commonly known as a truck and overtook said school bus while discharging this plaintiff and other school children passengers and undertook to pass said school bus while discharging passengers as aforesaid and at a place upon said highway where no safety zone was provided and at a point where

said truck could not pass said school bus at a distance of at least eight feet therefrom. It then and there became the duty of said defendant, Paul Berry, and said defendant, W. M. Daniel, through and by his agent, Paul Berry, to bring said truck to a full stop in less than five feet from said school bus while stopped to discharge passengers as aforesaid and remain standing until such school bus had discharged passengers.

"Said plaintiff says that said defendant, Paul Berry, did not perform his duty as aforesaid but wholly failed and neglected so to do and did negligently, carelessly, unlawfully and in total disregard of said plaintiff's rights as a school bus passenger, operate said truck upon, over and against the body of said plaintiff with great force and violence thereby striking said plaintiff and violently throwing his body upon and against the hard surfaced portion of said highway and by reason thereof said plaintiff's body was cut and bruised and the bones of his body were mangled and broken. * * *"

Code, 17-8-11, provides, "An operator of a vehicle shall bring the same to a full stop not less than five feet from any street car or school bus which has stopped to receive or discharge passengers, and shall remain standing until such car or school bus has taken on or discharged such passenger: Provided, however, that the operator may pass such street car or school bus where a safety zone is established by the proper authorities; Provided further, That the operator, if he slows down and proceeds cautiously, may pass such street car or school bus at a distance of at least eight feet therefrom when outside the limits of an incorporated town or city. * * *." The declaration charges a violation of this statute, and, we hold, sufficiently alleged that such violation was the proximate cause of plaintiff's injuries. It also sufficiently alleges common law negligence against the defendant, and in effect charged two causes of action in the one count of the declaration.

There was no demurrer to the declaration, and, under Code, 56-4-12, which provides that "No action shall abate

for want of form, where the declaration sets forth sufficient matter of substance for the court to proceed upon the merits of the case," a demurrer did not lie. In *Grass v. Big Creek Development Co.,* 75 W. Va. 719, 84 S. E. 750, it was held: "A declaration, though indefinite and uncertain, is not demurrable, if with reasonable certainty it states one or more good and not inconsistent causes of action. A demurrer does not lie for mere indefiniteness or duplicity. * * *" See also Hogg's Pleadings and Forms, 4th ed. 114.

On the trial of the case there was conflicting evidence as to the position of defendant's truck, in relation to the school bus, at the time of plaintiff's injury. There is no dispute as to the nature of the injury, or that defendant committed the act by which it was caused. The evidence with respect to the permanent nature of the injury is not satisfactory, one reason being that at the date of the trial, some four months after the accident, plaintiff was still encased in a cast, which, it was then contemplated, would be removed within six weeks after the trial; and it was stated that expected recovery would not be brought about under six months from the date of the trial. However, there was no request for a postponement of the trial on that ground, and we think it was too late to raise the question after the jury was impanelled.

The question of defendant's violation of statute law, or his common law negligence, arises from conflicting evidence as to what actually occurred. The defendant, operating a loaded truck, was following a school bus. The school bus stopped to permit school children to enter or leave the bus. The defendant stopped his truck at the rear of the school bus, and then, while the school bus was stationary, admittedly attempted to drive his truck around the bus, and in doing so struck the plaintiff. Defendant testifies that plaintiff suddenly stepped in front of the truck, sustaining a fracture of his left leg. One witness, the driver of the school bus, testified that at the time plaintiff was struck, defendant was driving his truck at a speed

of twenty or twenty-five miles an hour, but this is denied by defendant, who fixes his speed at not more than ten miles an hour. The driver of the school bus says that the truck was driven within one and one-half feet of the school bus, while defendant says that the truck was driven at a distance of at least nine feet from the bus. The testimony of defendant is that he attempted to pass the bus cautiously, and at a distance of more than eight feet therefrom, and that by reason of plaintiff's suddenly rushing in front of his truck, the accident which followed was unavoidable.

The testimony as to the nature of plaintiff's injuries is to the effect that he was put in a cast, in which he was kept for several weeks; that apparently the fractured limb had knitted successfully, and plaintiff was sent home. Some two or three weeks later what is called "bowing" began to develop, and it became necessary to reset the leg, and to place both legs in a cast with certain necessary supports. This condition existed at the time of the trial, during which plaintiff was taken into the courtroom and exhibited to the jury. Defendant questions that practice in his brief, but made no objection thereto at the trial. We do not think that such objection can be considered at this time.

The only medical testimony in the record is that of Dr. Ralston, who gives a history of the case. In general his opinion, as expressed in the trial, was that there would be complete recovery as to the fractured limb, and no permanent injurious results to the limb above the knee, but that, in his opinion, some stiffness in the left knee had resulted from plaintiff's injury, which would probably continue during his life. He also stated that the period of pain had passed, since a few days after the second cast was applied, but said that the discomfort of being in the cast was something to consider. On this testimony, and under the circumstances, set out above, the jury returned a verdict in favor of plaintitff in the sum of eight thousand dollars. A motion to set aside the verdict was over-

ruled by the trial court, and judgment entered thereon, to which action of the court we granted this writ of error.

The errors relied on in this Court are: (1) The court erred in permitting G. O. Mills, a justice of the peace, to testify orally as to what occurred when defendant appeared before him on the day following the accident, to answer a charge based thereon; (2) in giving plaintiff's instruction No. 1 on damages; (3) in refusing to give defendant's instruction "C"; and (4) in refusing to set aside the verdict as excessive, and as improperly induced by the appearance of the plaintiff at the trial; the argument of counsel; and lack of reliable medical prognosis of the ultimate result of plaintiff's injuries.

Considering the first point of error, it appears from the record that, on the date of the accident, a state trooper appeared on the scene, made an investigation, and required defendant to appear before a justice on the day following. While the cross-examination of defendant was in progress, counsel for plaintiff stated to the court, out of the presence of the jury, that, for the purposes of contradiction, he desired to read from the docket of G. O. Mills, Justice of the Peace of Raleigh County, which docket it was then represented contained the following: "R. L. Tabscott upon oath complains that on the fifteenth day of February, 1946, within the county aforesaid, Paul Allen Berry did unlawfully pass a school bus outside of an incorporated town or city, not at a distance of eight feet, and not proceeding cautiously, and being in violation of Article 8, Section 11 of the Motor Vehicle Laws of the State of West Virginia;" and to ask the defendant if that charge in the warrant was not read to him by G. O. Mills, justice of the peace, and if he did not plead guilty to the same. The question was permitted to be asked in the presence of the jury, to which defendant objected and excepted at the time. The defendant denied that he had heard such a charge read to him, or that he plead guilty to the same, but admitted payment of a fine, and his explanation of how he came to do so is quite indefinite. The

justice of the peace contradicted defendant on this point, and said that the charge was read to him, and that .he confessed to the same and paid a fine. It is contended by defendant that the testimony of the justice elicited by this question, was inadmissible.

The general rule, and certainly the better practice, is that when a record of a justice of the peace is sought to be relied on, the production of the original docket, in which such record is supposed to appear, if the same is available, should be required, but in the particular circumstances in which this question was propounded, we do not think the admission of the evdience elicited thereby constituted error prejudicial to the defendant. Generally speaking, where the docket of a justice of the peace is in existence, and available, it is the best evidence of what it contains.

Assignment No. 3, that the court erred in refusing to give defendant's instruction "C", involves the question whether there was sufficient evidence produced on the trial to warrant the giving of an instruction on the theory of unavoidable accident. The theory can only be considered in the case, upon the testimony of the defendant, that, while attempting to pass the school bus, he proceeded more than eight feet therefrom, slowed down and moved cautiously, and that, under these conditions, the plaintiff suddenly ran in front of his truck, and too late for him to avoid the accident. A majority of the Court is of opinion that the evidence, taken as a whole, did not warrant an instruction based on the theory of unavoidable accident, and we therefore hold that there was no error in refusing defendant's instruction "C".

Assignment No. 4 involves the refusal of the court to set aside the verdict as excessive; as improperly induced by the appearance of plaintiff at the trial; the argument of counsel; and the lack of reliable medical prognosis as to the probable ultimate result of plaintiff's injuries. As to the alleged excessiveness of the verdict, we deem it unwise to comment thereon, inasmuch as, under our ruling,

the case will have to be retried. We can see no legal ground for disturbing the verdict by reason of the appearance of plaintiff at the trial. Any improper argument of counsel, if there was such, was not called to the attention of the court, and cannot now be advanced for the first time in this Court. We think the lack of reliable medical prognosis as to the probable and ultimate result of plaintiff's injuries, could have been foreseen prior to the trial, and that no demand for postponement of the trial having been made, the assignment cannot be here considered.

This leaves the second assignment of error, based on the giving by the court of plaintiff's instruction No. 1. This instruction reads: "The Court instructs the jury that if you find for the plaintiff, you are, in estimating the damages, at liberty to consider the health and condition of the plaintiff before the injuries complained of as compared with his present condition in consequence of said injuries, and whether said injuries are, in their nature, permanent and how far said injuries are calculated to disable the plaintiff from engaging in those pursuits and employments for which, in the absence of said injuries, he would have been qualified, and also the physical and mental suffering to which he has been subjected, and will be subjected by reason of said injuries and allow such damages as, in your opinion, will be fair and a just compensation for the injuries which the plaintiff has sustained."

The objection to the instruction, specifically made at the trial, is that there was no evidence produced on the trial, which even tended to show that plaintiff would be thereafter subjected to physical and mental suffering. We think that objection, which was made in this Court, was and is well taken, and that the giving of this instruction was error, and prejudicial to the defendant. The evidence of Dr. Ralston was that the bones had united satisfactorily when the first cast was removed; that, at the date of the trial, the period of pain had passed; that there would be no shortening of the fractured limb; that, in his opinion,

there would be good and satisfactory union of the bones; and that the only permanent injury he could foresee was a probable stiffness in the knee of the fractured limb. The only statement of the physician that remotely suggests physical and mental suffering in the future was the mention of the temporary discomfort from being in a cast, the removal of which within six weeks from the date of the trial was contemplated. Everything in the record indicates that, aside from the stiffness in the knee, there will be no permanent injury, and that plaintiff will not hereafter suffer either physically or mentally. For this reason we think it was improper to inject into the case, through an instruction, the suggestion that plaintiff would suffer physically and mentally in the future. How much this may have influenced the jury in arriving at its verdict, we cannot say; but it is unfair to assume that, from the standpoint of defendant, it had an effect on the verdict, prejudicial to him.

For this error only, we reverse the judgment of the Circuit Court of Raleigh County, set aside the verdict of the jury, remand the case and award the defendant a new trial.

> *Judgment reversed; verdict*
> *set aside; new trial awarded.*

KENNA, JUDGE, dissenting:

The judgment of the Circuit Court of Raleigh County in this matter is reversed because of the giving of an instruction that relates to the quantum of damages, and not to the right of recovery. This Court is unanimously of the opinion that the verdict and judgment should be affirmed except as to the giving of plaintiff's Instruction No. 1. This instruction the majority of the Court is of the opinion was erroneously given due to the fact that it told the jury that if they found in favor of the plaintiff the damages awarded might include "the physical and mental suffering to which he has been subjected, and will be subjected by reason of said injuries," the majority being of the opinion that "there was no evidence produced on the

trial, which even tended to show that the plaintiff would be thereafter subjected to physical and mental suffering." This statement I think is plainly wrong, based upon the testimony shown by this record, as well as the statement of facts contained in the opinion of the majority.

The right of the plaintiff to recover being admitted, as it is, by the majority opinion which does not deal with the alleged excessiveness of the verdict, we are only interested in whether Instruction No. 1 is supported by enough evidence to sustain a verdict if based thereon.

This plaintiff was seven years old. His upper leg was broken and set in a hospital. He was released under the belief that the fracture had knit successfully. It had not. Within a few weeks it became necessary to rebreak and reset his leg. At that time it also became necessary to place both legs in a cast, or to place each leg in a separate cast, the record not being clear whether it was one or two pieces of plaster. The plaintiff was brought into court at the time of trial with both legs in casts where they had been for between three and four months. The uncontradicted medical testimony was that plaintiff's legs would have to remain in the cast for another six weeks.

Under these circumstances Doctor Ralsten testified that plaintiff's recovery would likely be completed except for a permanent stiffness in the left knee; that the period of pain had passed, but that the discomfort of being in the cast would continue until the cast was removed which he hoped could be within six weeks from that time. There was no contradiction of Doctor Ralsten's testimony which, of course, was offered on behalf of the plaintiff. To my mind the Court's holding to be erroneous an instruction speaking of future pain and suffering from those circumstances when it is uncontradicted that plaintiff had both his legs in a cast for between three and four months where they would be required to remain for at least six weeks, ending with a stiff left knee, is, to understate the matter, unsound. It is not necessary to cite authorities to sustain the statement that in the event of recovery for personal

injury plaintiff is entitled to damages not only for the physical and mental pain and suffering due directly to the injury itself, but also to that caused by the proper and necessary treatment of his injuries as well. It seems perfectly clear that the average adult whose legs had both been in a plaster cast for between three and four months would be disturbed both physically and mentally —call it pain, suffering, distress, irritation or what you will—but here we have a child. Under circumstances that would break whatever composure a grown person might possess, it is no mere assumption that a child would suffer. I would affirm the judgment of the Circuit Court of Raleigh County.

Although there was no demurrer to the declaration I believe that attention should be directed to the fact that in alleging the duty of the defendant for the breach of which recovery is sought, this language, accurately quoted in the majority opinion, is used:  "It then and there became the duty of said defendant Paul Berry * * * to bring said truck to a full stop in less than five feet from said school bus while stopped to discharge passengers * * *." Though not alleged expressly, plainly the right of recovery claimed in the declaration is for a breach of the duty imposed upon the drivers of vehicles by Code, 17-8-11. That section, however, provides:  "An operator of a vehicle shall bring the same to a full stop *not* less than five feet from any street car or school bus * * *" (Italics mine). It will be seen that the declaration by omitting the word "not" wrongly alleges the duty.