MOZETTE THOMAS

*v.*

BECKLEY MUSIC AND ELECTRIC COMPANY, A CORPORATION, AND COLIN McLUCKEY

(No. 12083)

Submitted September 12, 1961. Decided November 21, 1961.

*J. W. Maxwell,* for plaintiffs in error.

*Howard W. Carson,* for defendant in error.

GIVEN, JUDGE:

This action, based on alleged malicious prosecutions, was instituted in the Circuit Court of Fayette County, by Mozette Thomas against the Beckley Music and Electric Company and Colin McLuckey, president of the corporation and in charge of its operations. After completion of the introduction of evidence, the court directed a finding for plaintiff, insofar as liability was concerned, and left to the jury only the question of the amount of damages. The jury returned a verdict in favor of the plaintiff, finding damages in the amount of $8,500.00, and judgment was entered on the verdict.

The cause of action grew out of criminal prosecutions against Thomas, instituted by defendants, supposedly in connection with a transaction whereby defendants sold to Thomas, on a conditional sales contract, a combination radio-television set, and materials necessarily used in the installation thereof. The contract, duly executed, was timely recorded in Raleigh County, wherein the property was located. The contract provided that the property should be kept at the Raleigh County address, and contained this pro-

vision: "Buyer shall be responsible for any loss of or damage to said property. Should Buyer fail to pay said Time Balance or any part thereof when due, the entire unpaid balance shall at Seller's election become due immediately, or Seller may without notice, demand or legal process, take possession of the merchandise wherever located and retain all monies paid thereon for the use of said merchandise." It is not questioned that the buyer was in default in the monthly payments provided for by the contract long before any attempt was made to repossess the property, or to prosecute Thomas.

The conditional sales contract was executed, and the television set delivered, on the fifth day of February, 1955. In June, 1955, after having made several monthly payments, Thomas moved from his place of residence in Raleigh County to Ingram Branch, in Fayette County. In August, 1957, he moved from Ingram Branch to Minden, also in Fayette County. In April, 1959, he moved from Minden to Prudence, in Fayette County, where he resided at the time of the trial. The evidence is in conflict as to whether defendants had notice of the intention of Thomas to move the television set from Raleigh County but, in view of the action of the court in instructing the jury, we assume for the purpose of consideration of the case, that defendants had no such notice.

There apparently can be no reasonable doubt that defendants made continuous efforts to effect collection of the delinquent monthly payments, without success, except that one payment was received some time in September, 1956, while Thomas resided at Ingram Branch. After learning that the television set had been moved to Minden, on August 6, 1958, it was repossessed by defendant McLuckey and an employee of the Beckley Music and Electric Company, and remained in the possession of defendants and was attempted to be exhibited to the jury at the time of the trial.

On April 9, 1957, defendants caused a warrant to be issued by a justice of the peace of Raleigh County,

charging Thomas with having committed a misdemeanor. Apparently the charge was dismissed for "lack of evidence", but that warrant is not mentioned in the declaration, though certain evidence relating thereto was admitted in evidence, apparently for the purpose of indicating whether there existed malice in the repeated prosecutions of Thomas.

On August 20, 1958, on complaint of the defendant McLuckey, who also was acting in behalf of the defendant corporation, a second warrant was issued by the same justice of the peace, charging Thomas with having committed a misdemeanor for "destruction of property". Pursuant to the command of this warrant, Thomas was arrested in Fayette County by a deputy sheriff of that county, and was detained by the sheriff of that county for several hours, and was incarcerated in jail for approximately forty-seven minutes, until he obtained surety for his appearance for trial on the charge contained in the warrant, time for the trial having been set for the twenty-eighth day of October, 1958. On the day set for trial Thomas appeared before the justice of the peace in Raleigh County. The warrant under which the arrest had been made was apparently withdrawn by defendants and, at that time, on complaint of "Beckley Music and Electric Company By Colin McLuckey", the same justice of the peace issued a warrant which charged that Thomas "did unlawfully and feloniously take and carry away, destroy, injure and deface certain personal property * * * in violation of Chapter 61, Art. 3, Sec. 30 of the Code of West Virginia * * *". On the same day Thomas was tried on the charge contained in the last mentioned warrant, and the justice of the peace noted on his docket that: "After hearing all the evidence and argument by counsel, the verdict of the court is, that the defendant is guilty. The defendant is therefore dismissed—Venue of jurisdiction lies in other County." The evidence makes it clear, however, that the result of the trial was not based on the merits of the case, but on the question of venue.

It is contended by defendants that the failure of Thomas to return certain materials sold and used in the installation of the television set, and damages done to it by Thomas, constitute sufficient proof of the existence of probable cause in the prosecution of the criminal proceedings. The evidence as to such matters admitted in evidence is very meager, not sufficient to establish any fault on the part of Thomas, who testified positively that, at the time of the repossession of the television set, there ''hadn't been no damage done to it''. Another witness, Lola Drafton, testified to the effect that she had observed the set a short time before it was repossessed and no damage had been done to it at that time. This evidence, and other evidence to the same effect, is not really denied by anything properly in the record, except perhaps the proof shows that a control knob had been broken and that the television set needed new tubes, but it is not established, or even indicated, that such conditions resulted from any wrongful act on the part of Thomas.

Ruby McLuckey, wife of defendant Colin McLuckey, and secretary and treasurer of Beckley Music and Electric Company, and who appeared fully familiar with the transaction, testified that the reason a warrant was ''sworn out'' against Thomas was: ''Well, this was the second time we had lost Mr. Thomas and we were trying to find our merchandise, so we swore a warrant out, trying to locate him.'' As above pointed out, defendants actually filed three complaints and caused three warrants to be issued against Thomas, two of the charges contained in the warrants not having been prosecuted to a final determination of the truth or falsity of the charges, and the warrant on which Thomas was arrested and incarcerated was apparently withdrawn by defendants. Certainly it can not be argued that such facts are in conflict with those establishing want of probable cause, or that they make a question of fact for jury determination. The evidence of defendants, in truth, strengthens the proof of Thomas as to the want of probable cause and as to

the existence of malice. No witness other than Ruby McLuckey was called by defendants.

The first question to be considered is whether the trial court committed prejudicial error in refusing to grant defendants a continuance of the trial. The action was matured for trial at the July, 1959, term of court. On motion of defendants a continuance was granted to the September, 1959, term of court. On September 28, 1959, counsel for defendants, counsel theretofore but not now representing defendants, went to the office of counsel for plaintiff and represented his inability to try the case on the first day of October, 1959, the day fixed for trial, for the reason that the defendant McLuckey was then confined in a hospital and that major surgery seemed necessary and imminent, and a certificate of a reputable physican was presented, showing, in effect, that McLuckey would be unable to attend the trial. The operation was performed on September 30, and it appears beyond question that McLuckey was unable to attend the trial on October 1. When the case was called for trial a motion for a continuance was made and these facts were presented to the trial judge by the same counsel who had previously represented defendants and who represented defendants throughout the trial.

In opposition to the motion for a continuance it was shown that Thomas was about seventy-nine years of age; that the physical condition of defendant McLuckey from which he was suffering was the same condition for which the first continuance had been granted; that McLuckey had been observed at his place of business on numerous occasions within the month preceding the day fixed for trial; that he had not consulted his counsel concerning the trial since the previous continuance; that no witness for defendants had been subpoenaed for the trial, though employees of the defendant corporation apparently had full knowledge of material facts which might prove essential to the defense; that no effort was made by defendants to apprise the plaintiff of the facts on which a motion

for a continuance would be based until a very short time before the day set for trial; and that plaintiff had subpoenaed numerous witnesses and made ready for trial, even before any knowledge that a motion for such a continuance would be made. Moreover, there was no showing of any attempt to obtain any deposition or to show a reasonable probablity that McLuckey would be able to participate in a trial at some future time. In these circumstances, we have concluded that the question of the continuance was a matter within the sound discretion of the trial judge, and we can not say with any certainty that such discretion was abused.

In *Staples v. Left Fork Fuel Company,* 138 W. Va. 819, 77 S. E. 2d 872, we held: "1. A motion for a continuance is addressed to the sound and reviewable discretion of a trial court. The action of such court in overruling a motion of that character, in the absence of abuse of such discretion, is not ground for reversal." See *State v. Burdette,* 135 W. Va. 312, 63 S. E. 2d 69; *State v. McCoy,* 107 W. Va. 163, 148 S. E. 127; *State v. Bridgeman,* 88 W. Va. 231, 106 S. E. 708. In *Rogers v. Goforth,* 121 W. Va. 239, 2 S. E. 2d 903, we held: "1. Where there is unnecessary delay in making a motion for a continuance which may result in undue hardship to the opposite party in the event such motion is granted, the continuance should be refused by the trial court." See *Davis and Moore v. Walker,* 7 W. Va. 447.

What has been said in regard to a continuance applies to and necessarily controls the question relating to a motion for a postponement of the trial to a later day of the term. In *Thorn v. Tetrick,* 93 W. Va. 455, 116 S. E. 762, we held: "3. The rule governing continuance applies to motions to postpone to a later day, but courts will sometimes more readily exercise their discretion to postpone than to continue the case for the term." See *Jones v. Berry,* 130 W. Va. 189, 45 S. E. 2d 1; *Howard v. Commonwealth,* 174 Va. 417, 4 S. E. 2d 757.

It is vigorously contended by defendants that reversible error was committed by the trial court in holding, as a matter of law, and in so instructing the jury, that plaintiff Thomas had established want of probable cause in the prosecution of the criminal proceedings, and that the evidence established malice on the part of defendants in the institution and prosecution of such actions.

In *Van Hunter v. Beckley Newspapers Corporation*, 129 W. Va. 302, 40 S. E. 2d 332, we held that, to sustain an action for malicious prosecution, it must be established that there existed "both malice and want of probable cause in the prosecution complained of"; that malice "may be inferred" where want of probable cause is established; but that want of probable cause "may not be inferred" from the existence of malice. See *Wright v. Lantz*, 133 W. Va. 786, 58 S. E. 2d 123.

In *Radochio v. Katzen*, 92 W. Va. 340, 114 S. E. 746, probable cause is defined: "2. Probable cause for instituting a prosecution is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty." In the opinion it is stated: "* * * Minor says (Institutes, Vol. IV p. 479) that 'Probable cause seems to be best described as the existence of such facts and circumstances as would excite the belief in a reasonabel mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.' Accord: *Vinal v. Core, and Bailey v. Gollehon, supra.*" See *Vorholt v. Vorholt*, 111 W. Va. 196, 160 S. E. 916; *Wilmer v. Rosen*, 102 W. Va. 8, 135 S. E. 225, 49 A.L.R. 261; *McNair v. Erwin*, 84 W. Va. 250, 99 S. E. 454; *Wyatt v. Gridella*, 82 W. Va. 266, 95 S. E. 956; *Sudnick v. Kohn*, 81 W. Va. 492, 94 S. E. 962; *Haddad v. Chesapeake & Ohio Railway Co.*, 77 W. Va. 710, 88 S. E. 1038; *Bailey v. Gollehon*, 76 W. Va. 322, 85 S. E. 556;

*Waldron v. Sperry,* 53 W. Va. 116, 44 S. E. 283; *Porter v. Mack & Boren,* 50 W. Va. 581, 40 S. E. 459; *Brady v. Stiltner,* 40 W. Va. 289, 21 S. E. 729; *Vinal v. Core and Compton,* 18 W. Va. 1.

In *Vinal v. Core and Compton, supra,* this definition of malice was adopted: "6. By the last requisite, malice, is meant, not what this word imports, when used in common conversation, nor yet its classical meaning, but its legal and technical meaning, that is, some motive other than a desire to secure the punishment of a person believed by the prosecutor to be guilty of the crime charged, such as malignity, or a desire to get possession by such means of the goods alleged to be stolen, when the charge is larceny, or any other sinister or improper motive." That definition appears never to have been questioned by this Court. In *Wadkins v. Digman,* 82 W. Va. 623, 96 S. E. 1016, we held: "3. By legal malice, as applied in actions for malicious prosecution, is meant any sinister or improper motive other than a desire to punish the party who is alleged to have committed the offense. Where the chief purpose in causing an arrest is to obtain possession of personal property claimed by defendant, it is malicious." In *Goodman v. Klein,* 87 W. Va. 292, 299, 104 S. E. 726, it is stated: "* * * The question of whether or not the defendant was actuated by malice in instituting a criminal prosecution is in nearly all cases one for the jury. In fact it is stated in *Vinal v. Core,* 18 W. Va. 1, that whether particular facts admitted, or undisputed or assumed, do or do not constitute malice, is exclusively for the jury. This statement is perhaps broader than is justified. There may be cases in which no inference can be drawn from the evidence proven except that the defendant was actuated by malice. In such a case a verdict in favor of the defendant could not be sustained. There are many cases which hold that the evidence of want of probable cause and of intentional wrongdoing may be so clear as to authorize the court to hold that certain undisputed facts establish a *prima facie* case warrant-

ing a verdict unless rebutted * * *''. See *Wilmer v. Rosen,* 102 W. Va. 8, 135 S. E. 225, 49 A.L.R. 261; *McNair v. Erwin,* 84 W. Va. 250, 99 S. E. 454.

In *Harper v. Harper,* 49 W. Va. 661, 39 S. E. 661, it was held that ''the discharge by a justice of the plaintiff, who has been arrested and brought before him for examination, or the refusal of a grand jury to indict him, is *prima facie* evidence of want of probable cause''. And in *Fetty v. Huntington Loan Co.,* 70 W. Va. 688, 74 S. E. 956, it is stated: ''Plaintiff's discharge by the justice is *prima facie* evidence of the want of probable cause, but may be rebutted by proof. *Vinal v. Core, supra,* (Syl. pt. 16); *Harper v. Harper,* 49 W. Va. 661, 39 S. E. 661.

''Malice is also a necessary element of the action, which plaintiff must establish. But being a matter of motive and, therefore, difficult to prove by direct evidence, it may be inferred from want of probable cause. *Vinal v. Core, supra,* (Syl. pt. 10). Malice is a comprehensive, technical term. It is not confined to personal hatred or ill-will, but comprehends any unlawful motive or purpose; as, for instance, procuring the arrest of a party on a criminal warrant, for the purpose of forcing him to pay a debt, and not for the purpose of punishing him for the crime charged. 26 Cyc. 50.''

We have also held that proof of want of probable cause ''devolves on the plaintiff'', *Porter v. Mack & Boren,* 50 W. Va. 581, 40 S. E. 459, Point 12, Syllabus; that ''Good faith on the part of the prosecutor is an essential element of probable cause'', *Dunlap v. The Chesapeake & Ohio Railway Co.,* 107 W. Va. 186, 148 S. E. 105, 65 A.L.R. 221; and that a corporation is liable for ''malicious prosecution by its agent'', *Meadows v. Corinne Coal & Land Co.,* 115 W. Va. 522, 177 S. E. 281.

In *Bailey v. Gollehon,* 76 W. Va. 322, 85 S. E. 556, it was held: ''1. If, in an action for malicious prosecution, sufficient facts to constitute probable cause for

institution of the criminal proceedings are clearly established by admissions or uncontradicted evidence or both, it is the province of the court to deny right of recovery by direction of a verdict for the defendant or the setting aside of a verdict for the plaintiff.'' Obviously, if in such actions it is the duty of the trial court to set aside the verdict on the basis of lack of evidence to support it, there would be no error in the action of the court in instructing the jury as to its finding in that respect. In *Staley v. Rife,* 109 W. Va. 701, 156 S. E. 113, we held: ''3. Where the court decides from admitted facts in the case that there was probable cause for the prosecution complained of, such ruling will not be reversed unless plainly wrong.'' See *Wilmer v. Rosen,* 102 W. Va. 8, 135 S. E. 225, 49 A.L.R. 261; *LaRue v. Lee,* 63 W. Va. 388, 60 S. E. 388.

These clear, pertinent holdings leave only for determination the question of whether proof introduced so clearly supports the contention of Thomas that probable cause was lacking in the criminal prosecutions mentioned in the declaration, admittedly set in motion by defendants, and whether malice on the part of defendants existed, as to support the instruction of the court, and we have concluded that there was no reversible error in the action of the trial court in instructing the jury to find for the plaintiff insofar as probable cause and malice were involved, or in leaving to the jury only the question of the amount of damages to which the plaintiff was entitled. In *Truman v. Fidelity and Casualty Company of New York,* 146 W. Va. 707, 123 S. E. 2d 59, decided this term, we held: ''7. In a civil action for malicious prosecution, the issues of malice and probable cause become questions of law for the court where the evidence pertaining thereto is without conflict, or, though conflicting in some respects, is of such nature that only one inference may be drawn therefrom by reasonable minds.''

Considerable argument is made with reference to the allowance of exemplary or punitive damages in malicious prosecution actions, but we can not reach

that question for the reasons which appear later in the discussion and determination of another proposition. See, however, *Ennis v. Brawley,* 129 W. Va. 621, 41 S. E. 2d 680; *Toler v. Cassinelli,* 129 W. Va. 591, 41 S. E. 2d 672; *Pendleton v. Norfolk & Western Railroad Co.,* 82 W. Va. 270, 95 S. E. 941, 16 A.L.R. 761; *Goodman v. Klein,* 87 W. Va. 292, 104 S. E. 726.

The defendants contend that the trial court committed reversible error in refusing to admit into evidence a copy of the receipt and notice of sale supposedly given to Thomas at the time of the repossession of the television set, which is in the following language: "BECKLEY MUSIC AND ELECTRIC CO. P. O. Box 1109—Phone CL 3-3393 Lower End of Valley Drive No. 110 Beckley, W. Va., 8-6-1958

"Received of Mozzette Thomas—1—R.C.A.—Radio TV Comb. No. 21T344M Ser. No. 137180590—Set is mutilated — broken — wrecked — wilful destruction — Will sell at auction 10 days from this date 8-6-58—. This is your notice of sale. You did not produce the antennae 1100 foot of wire, etc. Demand was made but you have failed to produce merchandise.

"/s/ Beckley Music and Electric Co. by Colin Mc-Luckey". Though the defendants offered the copy minus any statement therein relating to the damaged condition of the property, we think there was no reversible error in the refusal thereof. Though the defendant McLuckey and an employee of the other defendant were present at the time of the repossession of the set, neither testified, by deposition or otherwise, that the original receipt was ever delivered to Thomas. Moreover, after eliminating from the receipt any reference to damages done to the television set, there remained such improper, self serving statements or assumptions as to render it inadmissible. Clearly, therefore, it was not an entry made in the regular course of business within the meaning of the pertinent rule, as contended by defendants. See The Law of Evidence, Virginia and West Virginia, Michie Company, Section 150; 32 C.J.S., Evidence, Section 696.

The trial court refused to read to the jury an instruction of defendants which would have told them that if they found "that the plaintiff is entitled to *punitive* damages as well as *exemplary* damages, then you shall separate your verdict and indicate the amount, if any, for *exemplary* damages, as well as the amount for *punitive* damages, if any." After refusing to give the instruction, the court offered to submit to the jury a special interrogatory requiring the jury to find the amount of compensatory damages and the amount of punitive damages, but defendants declined to offer such interrogatory.

Though the wording of the instruction offered was not correct, if we assume error in its refusal, such error was waived by defendants. After the jury had considered of their verdict for some time, they returned into court and inquired whether any finding of compensatory damages and punitive damages should be separated in the finding, after which a conference was held by the court with counsel of the respective parties, after which the court announced: "Let the record show there is no objection, then, to the Court's instruction, which is as follows:

"The Court instructs the jury that if their verdict be for both compensatory and punitive damages they will combine them and fill in the sum total in the blank space provided on the form of verdict." It is clear, therefore, that defendants can not now complain as to the action of the court in refusing the interrogatory, or in permitting the jury to consolidate compensatory and punitive damages in its finding.

Other instructions offered by defendants and refused related to questions which have been fairly answered by the conclusion that there exists no reversible error in the action of the trial court in holding, as a matter of law, that plaintiff had established want of probable cause in the prosecution of the criminal proceedings, and that there existed malice on the part of defendants. Still other questions briefed, such as due

process and right of litigants to be represented by counsel, have been sufficiently answered by the holding that no error was committed by the refusal to grant a continuance of the trial. An argument is made that the verdict is excessive, but we find no error assigned as to any such contention and, even if we could consider the question, we can not, in the circumstances detailed, say that the verdict is excessive.

Finding no error which requires a reversal, the judgment of the Circuit Court of Fayette County appealed from is affirmed.

*Affirmed.*